May it please the court, Kenneth Van Vleck and my co-counsel Katherine Currie appearing on behalf of the appellants Lori Bock and Michael Bock. Your honors, Michael and Lori Bock asked this court to reverse the trial court's judgment on the pleadings in favor of travelers because travelers had a duty to defend the bocks in the underlying action against them. The trial court erred in ruling otherwise. When did you first notify travelers that the claim, the claim was at least in part based upon water runoff? When the cross-complaint was submitted to travelers, your honor, that put them on notice that there were facts that they needed to discover with regard to the underlying cause of damage. Well, what's in the record specifically that told travelers that there is a claim here for water runoff in the record? In the record, your honor. Well, that's the only thing we're bound by. We're bound by the record. Well, of course, your honor. In page 101 of the record, your honor, in the cross-complaint is the prayer for relief. Well, the cross-complaint does not say anything about water runoff. It does not specifically say water runoff, your honor. Not specifically. It doesn't say anything even general about water runoff. Yes, it does, your honor. What does it say? How does it say anything about water runoff? It says, your honor, that the ---- What page are we on in the complaint? Page 101 is the prayer for relief, your honor. Page 101 ---- I'm sorry. Yes. Page 101 is the prayer for relief, and it says in there that the braidsmen are seeking special damages, including the cost of repairing the cross-complaintant's property. If you look at page ---- I see. Line 12? Yes. Is that what you're referring to? I am, your honor. And also the removing of structures constructed by the cross-defendants. If you turn back, then, to page 99, where it discusses how that property damage was caused, it says that on page 99 at line 4, as a proximate result of the cross-defendant's entry thereon, the cross-complaintant's property was damaged. What does it say anything about water runoff? Your honor, that issue is raised in ---- it doesn't specifically say water runoff. I grant you that. Well, it doesn't say it specifically, but it doesn't say it generally either. It does if you read the California Supreme Court case of Montrose as saying that in order for travelers to deny coverage before they can refuse to provide a defense, they must show that the complaint, the underlying complaint, conclusively precludes any possibility that there may be a covered claim. Well, in order for them to have an obligation to defend, don't you have to first show that there's a claim made within the carriage of the policy? Yes, Your Honor. They do that. Okay. So you claim that the damage here was as a result of water runoff, and I have not seen anything that you read there which would in any way, wild as it may be, leave my mind with the thought that the claim here is for water runoff rather than for the entry of the construction of a carport. Well, Your Honor, if I may, in the Montrose case, travelers raised this very same argument. They said Montrose has been dumping chemicals illegally for 35 years. The complaint against Montrose did. And travelers said that can only be read as an intentional act. And the California Supreme Court disagreed with that. The California Supreme Court said, yes, there is nothing in the complaint that describes  broadly. And we have to say that unless the complaint conclusively precludes any possibility, no matter how remote that possibility, no matter how wild that possibility is. Yeah, but there's a no speculation rule here that they don't have to speculate that some – within some sort of thought of their speculation that there could be. You have to show that there's – they have a duty to defend, but you have a first duty to notify that there's a claim within the carriage. Your Honor, the traveler's policy defines – or promises defend its insurers against claims brought against them for damages, for bodily injury or property damage that arise from an occurrence. We have half of that. We have the bodily injury or property damage. There was clearly property damage alleged in the complaint. That puts it within the possibility that there might be a claim. The – then you look at Montrose, and Montrose says because there was a bodily injury or property damage alleged, you have to engage in any possible reading of the complaint that might possibly lead to coverage. And so I think we have to look at this in the context of paragraph 8 of the first cause of action as well. Your Honor, of course you do, yes. You read this as saying that without cross-complainant success, entered cross-complainant property and constructed various structures, including but not limited to the carport. Well, that's just a classic encroachment claim. If it were a classic encroachment claim, Your Honor, then there wouldn't be any request for special damages. And going to the other point that was raised, the issue with regard to whether this puts travelers on notice if they need to do some investigation, of course it does, because it alleges that there was property damage and it alleges that the property damage was caused by the entry onto the land. The 9 talks about substantial repairs were and are necessary to restore the property to its former condition, which seems to be talking about repairs, not just removing a property. And then the special damages, as you know, talks about the cost of repairing property and removing any structures, including but not limited to the carport. So again, we're talking about something other than removing the structures. That's correct, Your Honor. That's just a clue. I don't know whether you would even need all that, but it's certainly a clue that there's something going on here other than just removing the property. I think that's exactly right, Your Honor. And if we go back to the standard in California as established by Montrose, it says that an insurer must may refuse only – I'm sorry – may refuse to defend only in those circumstances where the complaint conclusively precludes any possibility. And going to the no speculation rule, Your Honor, that is – that says when there hasn't been a claim made that falls within the potential coverage. And that means there was no bodily injury alleged, there was no allegation of property damage, for instance, a breach of contract. How much did you settle? Now, you settled this based on water runoff, I understand. Is that correct? Your Honor, the case was settled based upon a number of factors, primarily Well, you're claiming – now, you're claiming that – as far as the claim against travelers, that they should have insured you for the water runoff. The – that they should have provided a defense because the water runoff was one of the allegations. How much did you settle that claim for the water runoff with your neighbor with – how much was that settled for? It was settled for an exchange of property rights, Your Honor. Oh, an exchange for property – for a boundary dispute, right? No, no, Your Honor, because in the interim, the box had removed the carport so that it no longer had water runoff going onto the neighbor's property. They were forced to do that. Okay. That was your – that was your client's? The carport belonged to my client, yes. Okay. So that it was – there was no money that was passed hands here? That's correct, Your Honor, yes. Okay. So basically what you have as suit here is you're claiming you really want your client instigate this action in the first place, to acquire a title, based upon a survey which they got originally which turned to be inaccurate, correct? No, Your Honor. We are seeking to have the insured – or the insurance company live up to the obligations in its policy which says that they will defend against any claim that's – Well, I understand that, but it was generated in the first instance by – by a survey which your client obtained which turned out to be inaccurate, correct? The lawsuit certainly started with my client's filing a complaint. And that – and that survey, they – based on that lawsuit to try to acquire a title, turned out to be inaccurate, correct? That's correct, Your Honor. Okay. Now, when the correct survey was made, it turned out that your carport never infringed on their property. Is that correct? That's correct, Your Honor. Okay. So that the only damage is water running off of that carport, which you're claiming – you're claiming they should have defended you for. Is that correct? That's correct as well, Your Honor. Okay. Where in discovery – interrogatory depositions – was it known to you for the first time that they were claiming that their property was damaged by water runoff? Your Honor, I have to – In the record. Your Honor, I was not the – I became the trial counsel. Yeah, well, you're here right now to answer questions. So my question to you is where in the record would travelers – were you aware for the first time or at any time that water runoff was the claim that there was carriage for? And if there is such information, when did you notify travelers of that fact? Okay. So I apologize for not answering it directly. I wasn't the counsel at the time. I substituted it in the case shortly before trial. So I can tell you, though, that my clients have told me – and it's not in the record here, but my clients have said that they're – Well, if it's not in the record, don't tell me, because as a judge, I'm bound by the record. I understand. You were asking when we first became aware of the claim. Does the record reflect that discovery made known to your client that they – that your neighbor was claiming water runoff from this carport, which was built on your – on your client's property, ultimately, you said? Where was that in the record reflected that your client knew that? I believe that there was trial testimony regarding that, but I don't know. Well, when you believe – now, you have to tell me where it's in the record that you knew that the claim here by your neighbor was for water runoff. In the record before this Court, there is nothing here. All right. So that there's – and if there's not – there's nothing in the record that reflects that you told travelers that the claim here was for water runoff from your carport, is there? That's correct, Your Honor. Can I ask a question? Did you – are you asking for just the defense of the counterclaim? In other words, just a portion of the fees involved in the litigation? I believe that will be an issue to be determined at trial, Your Honor, what the amount of the fees were that were spent on the cross-complaint versus the complaint, yes. But you're certainly not claiming everything. Oh, that's correct, Your Honor. Okay. And round figures, what is that claim that you're claiming against travelers for their failure to defend? My clients, I believe, they have spent several hundred thousand dollars in effectively bankruptcy. Several hundred thousand dollars? Yes, Your Honor. Over several hundred thousand dollars. Over the course of four years of litigation through at least one appeal and back for a second trial. And they spent all that money, and there's no discovery in this record which reflects that they knew that the claim being made by the neighbor was water runoff. Is that correct? Your Honor, the record from the trial court was not brought up here on appeal. The trial court in Napa County was not brought up here. Look, I'm bound by the record that's filed here. You're making a claim, sir. As a judge, I can only look at the record. There's nothing in this record, as far as I was able to see, that indicates that you were ever advised by your neighbor, your client's neighbor, that they were claiming water runoff as damage. Is that correct? Yes, Your Honor. And there's nothing in this record which indicates that you ever told travelers that there is discovery or claim, that there's discovery which indicates that the claim is not limited to erecting a carport or something on a property, but it also includes water runoff. Is that correct? That's not correct, Your Honor. When we submitted the complaint to travelers, the complaint contains allegations in it that caused travelers to need to do an investigation. California law is very clear on this. There's two very good reasons. One is that the claim is not limited to erecting a carport. The other is that the claim is not limited to erecting a carport. The complaint never – that cross-claim never mentioned water runoff, though. That's correct, Your Honor. But by tendering the claim to travelers, travelers had a statutory obligation in California to do an investigation, which it failed to do, and it is charged under Civil Code section 19 with what it would have found if it had done an investigation, and had it done the investigation, it would have determined that the – That's – that's correct, Your Honor. It is in the record of the underlying case, but the record of the underlying case isn't here. That's correct, Your Honor. I see that I have two minutes left. I'd like to reserve the floor. You may do so, counsel. Thank you. We'll hear from the travelers. Good morning, Your Honors. May it please the Court, John Brooks on behalf of the appellee travelers. A half a dozen times over the last 20 years, the California Supreme Court has announced or reprised what it calls the familiar rules governing the duty to defend, one of those being that the duty to defend is determined by two things only, the facts alleged in the complaint and the other facts that are actually known to the insurance company at the time of the tender of the complaint for defense. And on the record here, there is nothing showing that at the time the complaint was tendered to travelers for defense, there were any facts or any allegations showing that anything was in dispute other than this boundary dispute and the building of the carport. And I'm having a hard time with that because, I mean, given the very forgiving – very, very forgiving standard of the California Supreme Court with regard to the fact that there has to be essentially no way this complaint can be read that way. So looking – is that the right standard? Gershengorn Your Honor, the correct standard is, under the facts actually alleged in the complaint, is there any conceivable legal theory that could lead to coverage? The standard is not, are there any conceivable facts that aren't alleged that might  Kagan But it doesn't say the facts have to be – but there's nothing that says the facts have to be specifically alleged as opposed to a way of construing what was alleged. Gershengorn I think the correct – the case that speaks most directly to that is the Scottsdale case, which says under the facts alleged or fairly inferable. And Scottsdale is in the papers. Kagan Okay. So the complaint says that substantial repairs were and are necessary to restore the property. And that seems to go beyond – you're talking about restoring – you're talking about repairs. You're not talking about removing the property. You're talking about repairs. So you wouldn't ordinarily call taking a carport away a repair, would you? Gershengorn I think there are three responses I'd like to give to that point, because I've been thinking about that since you raised it during the original argument. First of all, it doesn't seem at all unusual to me that if somebody goes on to another person's property and builds a structure, digs a foundation, puts posts in, that there will be repairs necessary to the property. Kagan That's one possibility, but another possibility is they're talking about  Gershengorn Second answer to the question goes to that. Assume that the complaint was even more clear. Assume it said there was this encroachment and we're suing for that, and there was also unspecified other conduct that created property damage. Okay? The complaint is making clear that it's talking about something else other than the encroachment. Now, the question is, would the insurer have carried its burden, its initial burden, of showing a covered claim? And I submit that the answer to that is no. If all the complaint on its face shows is some unknown conduct caused property damage, the insurer does not carry this initial burden of showing that the conduct, that accidental conduct is at issue. Kagan But under Montrose and that line of cases, I thought they don't have to, it doesn't have to specify that it's unintentional conduct, as long as it doesn't say it isn't. Here's the difference of what's going on in Montrose. In Montrose, it was alleged that chemicals had been discharged. Now, it may be unlikely that in the case of a company like Montrose, the discharge was accidental. The Court said discharging of chemicals can be intentional or it can be accidental. And because the complaint was silent as to that, there was a duty to defend. And the repairs, the way in which this, these, the property was damaged could have been intentional or could have been accidental. Well, the only injury-causing conduct that was alleged in the complaint was the encroachment in the building of the other structure. And that is a matter of fact. Kagan It was a proximate result of the cross-defendant's entry. It was that. It has to be that. But building something that then causes separate damage, which wasn't intended, still fits. Why not? The building of a structure, paragraph 9, which says, And the entry caused damages, immediately follows paragraph 8, which talks about what happened during the entry. The box entered the land and the box built the structure. Kagan Right. The structure, it turns out, as a proximate, the structure, it turned out, had a problem. So as a proximate result, the property was damaged. Gershengorn There's no facts alleged in the complaint to support that possibility. Kagan But there's no preclusion of it either. That's, that's, so the question is, who wins at that point? When, when, when, I mean, in fact, it appears that's what happened. And in fact, it appears that's what was litigated. Now, I understand that's not in the record, but the fact that that seems to be true certainly suggests that it wasn't, it's some confirmation that it was accomplished within the complaint. Gershengorn Those facts aren't in the record. I think there's a reason for that, because they can't be in the record. I just want to make clear that we dispute that that was ever what this underlying case was about. But to answer your question, the initial duty to show facts that bring the case within coverage falls on the plaintiff, according to Supreme Court in Waller. This complaint, on its face, doesn't do that, because the only conduct, the only injury-causing conduct that's alleged is the structure. And you've got to start speculating, like Plaintiff did on page 26, about all these possible things that could have happened with backhoes or spilled chemicals. I would also like to point out, and this is the third part of the answer that I began before, page 114 of the record, that was the second tender of this complaint. It was a letter written by Travelers to Mr. Van Vleck, stating again that Travelers sees no basis for a defense in this complaint, and asking Mr. Van Vleck, if there's anything we're missing, let us know. Did it use the word theories? I don't have that on the desk here, but what was the gist of the question? Or the invitation? Let me quote this sentence, after Travelers says we can't find a basis to defend the complaint. Quote, If you have any questions about this letter or know of any matters which you believe that Travelers has failed to consider which may impact our coverage decision, please let us know at your earliest convenience. Thank you. And I gather there was no response to that letter, or what? What happened after that letter? There was no response to that letter that I'm aware of, certainly not in the record. Not in the record. All right. There's nothing in the record that indicates that they had any discovery by way of interrogatories or depths or anything of that nature, indicating that the neighbor was claiming that as a result of building an illegal carport or whatever, or infringing, that the claim was for water damage, was there?  Your Honors, I've covered the points that I wanted to make. Other remarks, I think, would be redundant of what we've made in our papers, unless there are further questions. No further questions, counsel. Thank you. We will hear from the other side. You have some reserved time. Your Honors, there are three quick points I'd like to make. First is, with regard to Traveler's attempt to shift the burden to interpret its policy and to do the investigation to its insurers. Do you agree or disagree that there was no response to that letter? There was no response to that letter, Your Honor. There is no obligation on the insurers to respond to that letter. It is Traveler's statutory obligation to do an investigation of all of the facts that might lead to coverage. And they cannot interpret facts under myriad California law. They cannot interpret the facts so as to preclude coverage. They must interpret them to lean towards coverage. Those are two different points. And I don't understand, given the fact that they did ask you if you have anything else to come forward with it, and you didn't, if you try to go beyond the complaint, it seems to me you've got a problem, to impose some other obligation on them beyond what they did. Your Honor, I'm not trying to go beyond the complaint at all. I'm asking that Traveler's be held to the standard in California as set forth in Montreal. But you keep talking about they had an obligation to investigate, and I don't know why any obligation they had in that regard wasn't fulfilled. Because they failed to do an investigation at all. They simply compared the complaint to the other. Right. And they said, and if you know anything else, tell us, and you didn't. Your Honor, again, it is not the insurer's obligation to explain to them what is or what is not. Essentially, what that would do is to put the obligation on every insurer to go out and hire insurance coverage counsel at the time that they get a letter and to develop an entire case. But how are they supposed to investigate other than asking you? Well, the answer is in Mullen v. Glenn Falls Insurance Company, where it says that an insurer's duty to defend its insured in a lawsuit is not merely determined by looking in the language of the complaint filed against the insured. They must do an investigation. They are not simply going to sit back passively and wait for someone to write. But they asked you, because you're the people who know. I mean, you're clients, and they didn't say anything. So why isn't that the end of it? Your Honor, because my clients are typical of the clients out in Angwin, California. They are not savvy in the means of insurance law. They are told by an international insurance company that there's no coverage. They accept that. And hiring and it would force them to go out and hire an insurance coverage attorney at the time to try to make that determination. Frankly, I was involved in the case for about an hour before I tendered it to the insurance carrier. I at that time, I didn't know anything about the facts other than what was in the complaint. And the complaint on its face says to me that there's coverage for this claim. It says you entered onto the land and you caused damage. Maybe right, but that's a different question from this, for you to investigate that you're creating. Thank you, counsel. Your time has expired. The case just argued will be submitted for decision and the Court will adjourn.
judges: O'scannlain, Cowen, Berzon